Hazel Wilson Hotel Corporation, Plaintiff-Appellee, *v.* The City of Chicago *et al.,* Defendants-Appellants.

(No. 56760;

First District (2nd Division)—January 29, 1974.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellants.

O'Keefe, Ashenden, O'Brien & Hanson, of Chicago (John F. Ward, Jr., of counsel), for appellee.

## ON REHEARING

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

The City of Chicago and the Zoning Board of Appeals of the City of Chicago appeal from a judgment which reversed a decision of the Zoning Board of Appeals, with directions that the Zoning Administrator be ordered to approve the application for a special use so as to permit the plaintiff to continue to operate a shelter care home at 4544 N. Hazel Street, Chicago, which is located in a B 4-5 District under the Chicago Zoning Ordinance.

Plaintiff purchased the Hazel Wilson Hotel, 4544 North Hazel Street, Chicago, in 1967. The hotel is a five-story building which was, when purchased, being operated as an apartment hotel with apartments being rented to the general public. The building was purchased with the intention that it would be converted to a shelter care home use. At the time plaintiff acquired the building in 1967 there were no zoning regulations whatsoever for this type of use.

When purchased, the building contained approximately seventy apartments, including twenty-four bedroom units and forty-four one-room or efficiency apartments. The property was in a bad state of repair. Plaintiff spent $175,000 in repairing, refurnishing, and converting the building, in addition to the original purchase price of $275,000. A vacant drug store on the first floor was converted to a kitchen and dining room facility after the plaintiff had secured a building permit from the City. Prior to that time, no food had been served on the premises.

Agents of the Board of Health came to inspect the premises, and the plaintiff, at their suggestion, took out the kitchens (i.e., the stoves and the refrigerators) from the individual apartments. Recreation rooms were

made available on each floor, and each apartment was equipped with two beds to allow occupancy by two persons.

In December, 1968, the City Council passed a residential care home ordinance which provided for the licensing of residential care and shelter care homes. On January 3, 1969, the plaintiff, at the suggestion of the board of health, applied for a license and paid the city collector the sum of $650 as a license fee for a residential care home license for the year 1969. The city collector accepted the money, but the license was never issued. On December 19, 1969, the plaintiff paid the city collector an additional $650 for the 1970 residential care home license but, although the fee was accepted, no license was issued.

When license applications are made to the City, it is the City's standard operating procedure to route the applications through all of its departments which are involved with the type of activity for which the license is sought, for an approval prior to the issuance of the license. It appears that plaintiff's applications for both 1969 and 1970, in the course of their circulation for approvals, reached the City's Zoning Administrator, who simply took no action either to approve or disapprove said applications.

On August 24, 1970, nearly three years after the plaintiff began operating the premises as a shelter care home, the City Council passed an ordinance which made residential care homes and shelter care homes a special use in certain residentially zoned districts, and which allegedly thereby made plaintiff's existing use in the business district illegal. Thereafter, on December 1, 1970, the plaintiff's application for a license was disapproved by the Zoning Administrator because it violated the Chicago zoning ordinance. The plaintiff filed an appeal with the Zoning Board of Appeals from the decision of the Zoning Administrator, alleging that in November, 1967, there was no provision whatsoever in the zoning ordinance for either a shelter care home or a residential care home; that in December, 1968, the city council of the City of Chicago passed a residental care home ordinance to regulate the maintenance of such facilities; that the plaintiff's facility has been approved by the Department of Public Health and the Department of Mental Health of the State of Illinois, and by the board of health and the fire department of the City of Chicago.

Plaintiff's tenants are referred by the Department of Mental Health and the State pays for them. The Department of Public Aid has also referred a few private people, who are supported by the public aid.

On January 22, 1971, after a hearing, the Board of Appeals rendered its decision denying the appeal of the plaintiff. The Board found, among other things, "that it is without authority to act upon the appeal filed

in this case to legalize the operation of a shelter care home in a B 4-5 District" and, therefore, affirmed the decision of the Zoning Administrator.

No evidence was introduced on behalf of the City of Chicago, although Alderman O'Rourke and Roger Reynolds, executive director of the uptown Chicago commission, made statements for the record.

On February 16, 1971, plaintiff filed its complaint for administrative review, praying that the decision of the Zoning Board of Appeals be reversed. The judgment of the court below has already been set out in the opening paragraph of this opinion.

On this appeal, the defendants argue that, when the Board of Appeals denied a non-conforming use permit, it was error for the trial court to direct the issuance of a special use permit; and that the evidence does not establish the right to either a special use or a non-conforming use permit.

However, the finding and decision of the Board of Appeals does not disclose that the Board denied a non-conforming use permit to plaintiff. The Board found that the Zoning Administrator had denied the application for a shelter care home use, since such use was not a permitted use in a B 4-5 District; that the applicant's proper remedy was to make an application to the city council of the City of Chicago to make this use a part of the zoning ordinance, either as a permitted use or as a special use in the B 4-5 District in which the property is located; that the Board "is without authority to act upon the appeal filed in this case to legalize the operation of a shelter home in a B 4-5 District"; and that, therefore, it is resolved "that the appeal be and is hereby denied and the decision of the Office of the Zoning Administrator is affirmed."

From the foregoing, it is apparent that the Board did not deny a non-conforming use permit, but, rather, denied the application because, in the Board's opinion, it did not have jurisdiction to determine whether the plaintiff had a right to continue the operation of the shelter care home at 4544 N. Hazel Street, Chicago.

The issue in the case at bar is not whether the plaintiff should receive a non-conforming use permit or a special use permit, but rather whether the plaintiff should be permitted to continue the operation of a shelter care home at 4544 N. Hazel Street, Chicago.

■■ Zoning ordinances are basically of two types: cumulative and non-cumulative. The earlier type was comulative, *i.e.* certain specified uses are expressly permitted in the most restricted areas; then, in the next most restricted areas, certain other specified uses are permitted, in addition to all the uses permitted in the most restricted areas. The basic areas are usually four, normally identified in the order of decreasing re-

striction as residential, business, commercial, and industrial. Hence, in business areas, certain specified uses are permitted, in addition to all uses permitted in residential areas.

■■ The more recent type of zoning ordinance has been designated as non-cumulative, *i.e.* certain specified uses are expressly permitted in the most restricted areas; then, in the next most restricted areas, certain other specified uses are expressly permitted, *but* all uses not therein specified are prohibited, including the uses specified in the most restricted areas. Hence, in business areas, certain specified uses are permitted, but all other uses are prohibited, including the uses specified in residential areas. See *People ex rel. Skokie Townhouse Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill.2d 183, 157 N.E.2d 33.

The relevant zoning ordinance of the City of Chicago is concededly of the non-cumulative type. Hence, as of 24 August 1970, when use of premises for residential care and shelter care homes was made a special use in residential areas 2 through 8, such use then became a prohibited use in any business area.

■■ The problem presented by a zoning ordinance of the non-cumulative type is this: what is the status of a given use which is not expressly permitted in *any* area? The logical conclusion is that such use is simply illegal in the municipality. But, as to a use which is not per se inimical to the public health, safety or welfare of the municipality, such a blanket prohibition is clearly arbitrary and unconstitutional as applied to such a use. Hence, in order to preserve the constitutionality of a non-cumulative zoning ordinance in respect of such a use, it is necessary to construe such an ordinance as permitting such a use in any zoning area in which such a use is not incompatible with or significantly different from the uses expressly permitted in such an area. See *City of Chicago v. Sachs* (1953), 1 Ill.2d 342, 115 N.E.2d 762.

In the instant case, we hold that the use of premises located in a B 4-5 District for a residential or shelter care home prior to 24 August 1970 (when such use was first expressly provided for by being made a special use in residential districts 2 through 8, and before which date such use had not been provided for in any district whatsoever), was a legal use in such districts because it was a use which was neither incompatible with nor significantly different from certain of the uses then expressly permitted in such districts (*e.g.*, hotels and motels, lodging rooms, apartment hotels), and because it was not a use which was per se inimical to the public health, safety or welfare of the municipality.

■■ Conceding that, *after* 24 August 1970, such use is *no longer* a legal use in a B 4-5 District, we hold that the application of the Zoning Ordinance, as amended, to plaintiff's then existing use of his premises in the

B 4-5 District so as thereby to prohibit such use is unconstitutional under the circumstances. *People ex rel. Skokie Townhouse Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill.2d 183, 157 N.E.2d 33; *Western Theological Seminary v. City of Evanston* (1927), 325 Ill. 511, 156 N.E. 778; *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill.2d 408, 155 N.E.2d 97.

In the case at bar, there is no evidence that the public interest would be subserved by requiring the plaintiff to discontinue the operation of the shelter care home. On the other hand, the record clearly shows that the plaintiff would suffer a great financial loss if it was required to comply with the ordinance of August 24, 1970, and thereby be compelled to cease operation of the shelter care home at 4544 N. Hazel Street, Chicago.

Additionally, an element of estoppel is involved in this case. Soon after plaintiff purchased the property in question, as a condition to the plaintiff's using the premises for a shelter care home, the board of health of the City of Chicago required the removal of the kitchen facilities from each of the sixty-eight apartments of the building. The City then issued a permit for the conversion of the drug store into a kitchen and dining area to be used by the residents of the shelter care home.

■■ It was not until after the city council passed the residential care home ordinance in December, 1968 that the agents of the board of health suggested that the plaintiff file an application for a license to operate a shelter care home at 4544 N. Hazel Street, Chicago. The record also shows that the plaintiff's facility has been approved by the Department of Public Health and the Department of Mental Health of the State of Illinois as well as by the board of health and the fire department of the City of Chicago. And, finally, the City of Chicago accepted the plaintiff's residential care home license fees for the years 1969 and 1970, even though it did not actually issue the license for those years. Under such circumstances, it would be inequitable and unjust if the doctrine of estoppel did not apply against the defendants. *City of Evanston v. Robbins* (1969), 117 Ill.App.2d 278, 254 N.E.2d 536 (Petition for Leave to Appeal denied 43 Ill.2d 397).

We are of the opinion that the plaintiff should be permitted to continue the operation of a shelter care home at 4544 N. Hazel Street, Chicago.

The judgment of the trial court is affirmed except insofar as it ordered the issuance of a special use permit to plaintiff. That order is reversed. Instead, the Zoning Administrator is hereby ordered to certify that plaintiff's operation of a shelter care home at 4544 N. Hazel Street,

Chicago, is not subject to the provisions of the August 24, 1970, amendment, and to approve the issuance to plaintiff of the license applied for insofar as the matter of zoning is concerned.

Judgment affirmed in part, and reversed in part with directions.

STAMOS and LEIGHTON, JJ., concur.