PIONEER TRUST AND SAVINGS BANK, Trustee, Plaintiff-Appellee, *v.* THE COUNTY OF COOK *et al.*, Defendants.—(THE VILLAGE OF MOUNT PROSPECT, Intervenor-Defendant; THE VILLAGE OF ARLINGTON HEIGHTS, Intervenor-Defendant-Appellant.)

First District (5th Division)    No. 76-742

Opinion filed May 27, 1977.—Modified on denial of rehearing July 8, 1977.

Jack M. Siegel, of Chicago, for appellant.

Rudnick & Wolfe, of Chicago (Theodore J. Novak and Gregory K. Arenson, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Pioneer Trust and Savings Bank, as trustee, brought action in mandamus against defendants, County of Cook, its Department of Building, Zoning and Environmental Control, the department's commissioner and zoning administrator, and the secretary of the Cook County Zoning Board of Appeals, for the issuance of a zoning certificate and building permit for certain construction. The trial court ordered a writ of mandamus to issue. Thereafter, the order was vacated and the Village of Arlington Heights (Arlington) was given leave to intervene as a defendant. Later, the Village of Mount Prospect was also given leave to intervene as a defendant. Following further hearings, the trial court again ordered a writ of mandamus to issue compelling the county defendants to process, complete and issue a zoning certificate and building permit for the first phase of the proposed construction. Only intervenor-defendant Arlington appeals.

Arlington here contends that: (1) plaintiff was not entitled to a writ of mandamus for a zoning certificate and a building permit; (2) the 1966 zoning amendment reclassifying the subject property for R-5 purposes,

subject to a restrictive covenant, was invalid; (3) the plaintiff was not entitled to prove change of position or vested right under the R-5 classification when no such allegations appear in its pleadings; and (4) the plaintiff did not substantially change its position in reliance upon the probability of a permit being issued.

We reverse. The facts adduced at trial in the instant case are quite involved, with much testimony concerning both the expenses incurred by plaintiff in preparing plans for his proposed construction and the possible deficiencies in the form of plaintiff's official permit application. In light of our disposition of the case we find a detailed recitation of such facts unnecessary. Those facts pertinent to our decision follow.

Plaintiff, as trustee, holds legal title to Magnus Farm, which is the subject property of this action. It consists of approximately 42 acres and is located on the southeast corner of Douglas Avenue and Central Road in Elk Grove Township in unincorporated Cook County. The beneficial owner, Alexander Magnus, proposes to construct a development consisting of 728 units and seeks a building permit for 132 units as the first phase of the development. The property is already improved with a nursing home operated by Magnus.

Prior to 1966 the property was zoned as R-4 Single-Family Residence District under the Cook County Zoning Ordinance. Thereunder, the nursing home constituted a legal nonconforming use. On August 4, 1965, Magnus applied for rezoning to the then R-5 General Residence District of the Cook County Zoning Ordinance, which would make the nursing home a conforming use. The stated motivation for seeking the rezoning was: (1) to allow, over a number of years, substantial enlargement and improvement of the property, including the addition of 37 single-family and seven two-family retirement units; and (2) to prevent the development of a situation in which the nursing home could not be rebuilt in the event of a disaster.

A hearing on the application for rezoning was held before the Cook County Zoning Board of Appeals on November 15, 1965. During the course of the hearing Magnus testified that he had no objection to executing a restrictive covenant as a condition for rezoning so long as the covenant would not interfere with the expansion or improvement of the nursing home, and that he had no plans for building any apartment buildings on the property. A restrictive covenant was then executed on November 21, 1965, under which use of the property would be that of a "nursing, convalescent and retirement home" for a period of 25 years.

Following this hearing the Board made its findings and recommendation, which stated in pertinent part that:

> "The Board finds that the public interest in the maintenance of this nursing home and in the orderly expansion thereof amply

supports the requested rezoning. The Board is of the view that the owner should not be placed in the position of having to re-apply for permission to expand the operation every time an additional building or enlargement thereof is contemplated. The Board is impressed with the operation and is of the view that it is a definite asset to the community and to the particular area which is involved. The Board makes the following findings as required by law:

1. *Existing Uses in the Area*: The subject property is largely vacant but is used for a nursing home and for a certain amount of truck gardening. The properties surrounding the subject property on all sides are used for single family residential and for farming.

2. *Zoning Classification in the Area*: The subject property is zoned R4. Properties adjacent on the west and south are also zoned R4. Properties to the north and east are in Arlington Heights and Mt. Prospect respectively and they are zoned for single family residential development.

3. *Suitability for Use under Existing Zoning*: The nursing home operation is a non-conforming use under the present R4 zoning. Accordingly, the present zoning is not suited to the use and conversely the use is not suited to the zoning. It .is desirable to allow the use to be continued as a conforming use and the public interest is served in having the non-conforming use become a conforming use.

4. *Trend of Development*: The trend of development in this area is strictly residential. The nursing home ante-dates most of the residential development in the area. It is consistent with the residential development and no detrimental effects have arisen from the operation of the nursing home in the past and it is expected that there will be no such detrimental effects in the future operation of this home or in the expansion and enlargement thereof. On the contrary, substantial benefits to the immediate area will continue to be present because of the park-like atmosphere and in addition the community will have the advantage of the operation of the nursing home itself.

The Board recommends the rezoning of this property conditioned, however, upon the recording of the restrictive covenant aforesaid."

The property was subsequently rezoned to R-5.

In 1971 and 1972, Magnus constructed a four-unit prototype retirement building on Magnus Farm. Cook County had approved the plans for the

prototype on July 1, 1971, and had issued a permit to build the structure. The prototype was built to test the market and to determine the best type of retirement facility to construct. After building the prototype the Magnus family continued to review other retirement facilities in California, Florida and Illinois.

In the late fall of 1973, Magnus met architect Rick Strusiner and discussed the program to develop Magnus Farm into a nursing home and retirement housing center. Strusiner was retained to develop the plans for the proposed project.

In the spring of 1974 Strusiner arranged a meeting with Mr. Bernard J. O'Brien, then the zoning administrator for Cook County. He brought in the pre-plans which he had drawn and O'Brien pulled out the file, read the covenant, and said he would get back to Strusiner. Despite contacting O'Brien during the following months, Strusiner received no response until approximately September of 1974.

At that time Strusiner contacted O'Brien and stated that he was ready to apply for the building permit. O'Brien informed Strusiner that in order to obtain a permit Magnus would have to (1) file a mandamus action, or (2) ask for a State's Attorney's opinion on whether the project met the zoning requirements.

In December of 1974 Strusiner was through with his drawings and ready to apply for a building permit. He had the formal permit application completed in late 1974 or early 1975 and went to the Cook County Building Department in order to start the processing for a permit. The department refused to take the application until directed by O'Brien that Magnus had the zoning.

Strusiner received a letter from O'Brien dated January 9, 1975. Attached to this letter was a copy of an opinion from the State's Attorney's Office which had been written by Assistant State's Attorney Jerome Schain. Schain testified that he examined the plans submitted by Magnus. His opinion, dated January 7, 1975, stated in part that:

> "In our opinion, if the proposed construction is for a nursing, convalescent or retirement home, it will not violate the terms of the restrictive convenant [sic].

> "The determination of whether this particular construction as [sic] retirement home is a factual one that should be made by your department. It would appear to us that if the building were constructed and actually used as proposed, it would be defined as a retirement home."

O'Brien stated in his letter that "[i]n view of the [State's Attorney's] opinion, I suggest that you [Strusiner] make your application for the necessary Zoning Certificate and Building Permit."

Strusiner proceeded to make his first formal application for a building

permit in July of 1975, which application was refused on the grounds that the applicants did not have a Metropolitan Sanitary District Permit on file. On December 22, 1975, the building permit application was again refused because of the pendency of a new zoning ordinance and because the Building Commissioner did not think the zoning was proper for the proposed project.

In 1973, the Cook County Zoning Board of Appeals had begun the preparation of a Comprehensive Amendment to the Cook County Zoning Ordinance. In August of 1975 the Cook County Board of Commissioners imposed a three-month moratorium on accepting applications for building permits on certain types of projects pending special review by the Cook County Zoning Board of Appeals. Public hearings were held on the proposed zoning amendments during December of 1975. On January 14, 1976, the County Commissioners, sitting as a committee, voted to approve the Comprehensive Zoning Amendment under which the subject property would be zoned R-6, permitting a density of no more than eight units per acre.

On the afternoon of January 14, 1976, plaintiff filed its petition for a writ of mandamus. The county and other defendants filed their answer on January 16, and a motion for a hearing *instanter* was granted. A trial was held that afternoon, at the conclusion of which the trial court ordered a writ of mandamus to issue directing defendants to process, complete, and issue a zoning certificate and a building permit to petitioner.

On January 19, 1976, the Board of Commissioners of Cook County adopted the Comprehensive Zoning Amendment, classifying the subject property as R-6.

On February 2, 1976, the order of January 16 granting the writ of mandamus was vacated upon motion of the intervenor, Village of Arlington Heights. A subsequent trial was held, and the final order granting the writ of mandamus herein was entered on April 1, 1976. This appeal follows.

OPINION

The initial question facing this court is which of the three zoning classifications of the subject property should the permit application be considered under: R-4, R-5, or R-6. The trial court found that the 1966 rezoning of Magnus Farm from R-4 to R-5 was a valid instance of conditional zoning. It stated that:

"The most difficult issue in the case is whether the conditional zoning [of] the petitioner's property is valid. There was no quid pro quo except for the restrictive use of the property given to the County by Mr. Magnus. The County in passing the 1966 zoning ordinance did consider the public health, safety, and welfare, and

stated in the zoning amendment that its passage was in the public interest and not solely in [the] property owner's interest. Thus if any conditional zoning is valid, this would be valid."

Thus the trial court reviewed plaintiff's permit application under the R-5 ordinance provisions. Appellant contends, however, that the 1966 rezoning of Magnus Farm was improper and void *ab initio*, and thus the permit application should be reviewed according to the property's original R-4 classification. In the alternative, appellant contends that the permit application should be considered under the R-6 classification in effect when the final relief was granted in this case.

■■ In *Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, 357 N.E.2d 442, our supreme court determined that conditional rezoning is not invalid *per se*. The court, citing *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65, set forth six factors for determining the validity of any zoning ordinance:

"(1) existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the restrictions; (3) the extent to which the ordinance promotes health, safety, morals or general welfare of the public; (4) relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property." (65 Ill. 2d 40, 51, 357 N.E.2d 442, 448.)

We find that the 1966 rezoning of Magnus Farm to R-5 substantially meets the tests enumerated in both *La Salle* and *Goffinet*.

■■ The findings of the Cook County Zoning Board of Appeals stated that the use of the property for a nursing home was consistent with the residential development of the surrounding area. The surrounding properties were all zoned for single-family housing, although development in some areas, particularly to the south, had been sparse. No detrimental effects had arisen from the operation of the nursing home in the past and none were to be expected from either the future operation of the home or the expansion and enlargement thereof. The Board also called attention to the substantial benefits to the immediate area because of the park-like atmosphere of Magnus Farm and because of the services provided the community by the operation of the nursing home. Furthermore, the Board noted that the public interest would be served by having a nonconforming use become a conforming use. Based on these findings the Board of Commissioners passed the recommended rezoning, noting that the zoning amendment was in the public interest and not solely in the interest of the applicant. We find no evidence in the record of

any hardship or detriment to the surrounding properties to counter such conclusions. Thus, we find that the trial court correctly concluded that the 1966 R-5 rezoning of Magnus Farm was valid.

■■ ■ Arlington contends that the permit application should be reviewed under the R-6 provisions relying upon the general rule that the right to a writ of mandamus must exist at the time the relief is requested. (*People ex rel. Thomas v. Board of Education* (1963), 40 Ill. App. 2d 308, 188 N.E.2d 237.) At the time of the trial, the subject property was admittedly zoned under the new R-6 classification and therefore, Arlington contends these provisions should govern.

We find this contention inapposite to the case at bar. Plaintiff's theory of the case is that he substantially changed his position in expending substantial sums of money upon the probability that a building permit would issue to him under the R-5 classification. Where such change of position and reliance are shown municipal officials will not be allowed to hold up action on the issuance of the permit until passage of an amendatory ordinance, changing the standards so that a permit which was formerly lawful cannot thereafter be issued. (*Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 190 N.E.2d 364; *American National Bank & Trust Co. v. City of Chicago* (1974), 19 Ill. App. 3d 30, 311 N.E.2d 325.) In such cases the applicant is said to have a vested right to his permit. Under such a theory it is necessary to review the permit application in the instant case under the R-5 classification. While we shall so proceed, we do not intend to indicate thereby that plaintiff has indeed established the elements necessary to support its theory of the case.

■■ Arlington contends that plaintiff was not entitled to a writ of mandamus for a zoning certificate and building permit. We agree. Mandamus is an extraordinary remedy, and one seeking the writ must show a clear right to it. (*Daniels v. Cavner* (1949), 404 Ill. 372, 88 N.E.2d 823; *Wilson v. Board of Education* (1946), 394 Ill. 197, 68 N.E.2d 257.) In the instant case, in order to obtain a writ under plaintiff's theory of the case, a necessary element to be shown is that there be a probability that a building permit would be granted for the proposed project. Absent such a probability Magnus' expenditures alone would not be sufficient to endow him with a vested right to a building permit, and thus would not be sufficient to require a writ of mandamus to issue. Therefore, it is necessary to show that the project proposed by Magnus was a permitted use under R-5 zoning.

The record shows that the proposed project is a retirement complex for persons over 60 years old. There is no requirement that persons must be retired in order to live there. However, they must have a letter from their doctor stating that they are capable of independent living, with no custodial care. No medical facilities are provided other than the nursing

facilities available at the adjacent nursing home. Plaintiff eventually proposes to construct 26 buildings containing retirement units; however, the instant action only involves three proposed buildings for the first 132 units. There will be approximately 17.1 units per acre.

The proposed buildings would have central dining areas and central preparation of food. Some, but not all, meals will be required to be taken in the central dining room by the residents. The buildings will also contain extra rooms for hobbies, crafts, games and libraries. There will be in-house laundry facilities with maid service available. The units will have a central communication system for security and an emergency call system to summon aid from a nurse's or attendant's room. The elevators and hallways will be over-sized to accommodate stretchers. Each unit will have minimal kitchen facilities, but no dining rooms. There will be grab bars in the bathrooms in order to aid the residents.

The trial court found that such a complex did indeed constitute a retirement home, and that a retirement home was a permitted use under the R-5 zoning. While we may agree that the facilities described above could well be labeled as a retirement home, or complex, we disagree with the court's conclusion that this retirement home, as proposed, was a permitted use under R-5 zoning.

The Cook County Zoning Ordinance, prior to its 1976 amendment, established the following uses for R-5 districts:

"8.3-5 PERMITTED USES—R5 District

Any use permitted in the R1 District—unless otherwise set forth or superseded hereinafter—and in addition, the following uses:

(1) *Two-family Dwellings*

(2) *Multiple-family Dwellings,* but excluding commercial uses

(3) *Health and Medical Institutions, Nursery Schools*

(a) Convalescent, nursing, and rest homes

(b) Hospitals and sanitariums, but not including institutions for the care or treatment of insane, feeble-minded, alcoholic, or drug addict patients

(c) Institutions for the care of the aged and for children

(d) Nursery and children's day schools, (for profit)."

Also, a maximum unit density of 17.4 per acre was allowable.

The rules governing construction of a zoning ordinance are the same as those applied in the construction of statutes. (*La Salle National Bank v. The Thresholds* (1975), 27 Ill. App. 3d 635, 327 N.E.2d 22; *Niles Improvement Association v. J. Emil Anderson & Son, Inc.* (1968), 93 Ill. App. 2d 167, 236 N.E.2d 402.) The basic consideration in construing an ordinance is to ascertain and then give effect to the intention of the drafters. (*County of Lake v. Gateway Houses Foundation, Inc.* (1974), 19 Ill. App. 3d 318, 311 N.E.2d 371; *Niles Improvement Association v. J.*

*Emil Anderson & Son, Inc.*) To achieve this purpose, a court should focus upon the terminology used, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance as a whole. (*La Salle National Bank v. The Thresholds.*) As with most zoning questions, the trial court's ruling will not be disturbed unless contrary to the manifest weight of the evidence. *La Salle National Bank v. The Thresholds; Walz v. Traders Development Corp.* (1967), 80 Ill. App. 2d 386, 224 N.E.2d 483.

■■■ Under the foregoing criteria we believe the trial court erred in finding that the Magnus proposal was within the purview of the R-5 permitted uses.

Initially, we turn to an examination of the R-5 permitted uses of an instituted nature. Plaintiff specifically contends in his brief to this court that the Magnus proposal constitutes such a permitted institutional use. In addition, there was testimony by Nicholas Phillips, Planner for the Cook County Zoning Board of Appeals, that he would "assume" a retirement home would fall under the permitted classification of a home for the aged. To this testimony the court commented that "[t]here is no other classification it could fall under."

In determining whether the proposed project would qualify as a permitted use under such a classification we note that the term home for the aged is defined by statute in Illinois as:

> "any home operated not for profit under the auspices of a religious, fraternal, charitable or other non-profit organization, or by a county * * * or operated not for profit under an endowment, which * * * as its principal objective, provides maintenance, personal care, nursing, or sheltered care to * * * three or more persons over 60 years of age." (Ill. Rev. Stat. 1973, ch. 111½, par. 35.16.)

This definition has remained essentially unchanged since its enactment in 1957. (Ill. Rev. Stat. 1957, ch. 111½, par. 35.16.) While the proposed project in the instant case would apparently provide maintenance, defined as "food, shelter and laundry" (Ill. Rev. Stat. 1973, ch. 111½, par. 35.16), it is clearly not a not-for-profit home operated by one of the listed nonprofit organizations.

We believe that the zoning ordinance provisions manifest an intent that the State definition of home for the aged should apply to its list of permitted uses. First, we find it significant that *all* of the enumerated institutional R-5 uses are defined in Illinois law, and *all* are institutions requiring licensing, control, and supervision by the State authorities. Second, it also seems significant that the definition of nursing home contained in section 3.2 of the Cook County Zoning Ordinance

substantially corresponds to the State statutory definition of a nursing home (Ill. Rev. Stat. 1973, ch. 111½, par. 35.16). Third, and perhaps most important, the State act indicates that no one may operate or even advertise a home for the aged as such without first obtaining a license from the State. (Ill. Rev. Stat. 1973, ch. 111½, par. 35.17.) Thus, it would be useless for the county to try and establish a type of "institution for the aged" which would not meet the State law definition, since such an institution could not even be advertised as "for the aged" without a State license, and a State license would not issue unless the State requirements and definition were met by the applicant. In the instant case, a State license could not issue since the project is not under the auspices of one of the eligible organizations and is apparently not being organized as a nonprofit venture. We do not believe that the ordinance drafters intended such a project to qualify as an institution for the aged, since under State law it could not be advertised or operated as such.

■■ While the project might well be operated and advertised as a private retirement home or complex, as such it would significantly differ from the enumerated R-5 institutional uses which *all* require licensing and supervision by the State. Magnus testified that his project required no licensing due to the nature of the care provided, and certainly the proposed project would not provide the kind of medical and health care required of nursing homes or hospitals and sanitariums. (Ill. Rev. Stat. 1973, ch. 111½, pars. 35.16, 144.) Therefore, we find that the proposed use is not compatible with the institutional uses expressly permitted under R-5 and cannot be implied as a permitted institutional use within the ordinance. See *Hazel Wilson Hotel Corp. v. City of Chicago* (1974), 17 Ill. App. 3d 415, 308 N.E.2d 372.

Plaintiff points to several factors to support the trial court's determination in the instant case. Initially, plaintiff points to Assistant State's Attorney Schain's letter; however, we note that this opinion merely addressed itself to the issue of whether the proposed project was a retirement home under the terms of the restrictive covenant. It was not addressed to whether the proposed project was a permitted use under the R-5 classification. Secondly, plaintiff points to the testimony of Nicholas Phillips, planner for the Cook County Zoning Board of Appeals, that retirement homes would probably fall under the classification of homes for the aged. In view of our construction of the ordinance provisions we find such testimony unpersuasive. Lastly, plaintiff points to the fact that the Building Department granted a building permit for the prototype quadruplex retirement unit as evidence that the department viewed such structures as permitted institutions for the aged. Such speculation as to the reasoning underlying issuance of this permit in 1971 is also unpersuasive.

The correctness of this permit issuance was not challenged in 1971 and we do not purport to determine it here.

Lastly, we turn to the issue of the restrictive covenant. Schain, in his letter, commented that the proposed project would apparently qualify as a retirement home within the terms of the restrictive covenant. Similarly, the trial court found that the proposed retirement home was a permitted use under the restrictive covenant. In response, we note initially that we shall demonstrate further on our belief that this project does not qualify as a permitted retirement home as intended by the restrictive covenant. We agree. The restrictive covenant expressly allows a retirement home use, with no restriction or mandate as to size. Thus, the general R-5 density provision of a maximum of 17.4 units per acre would be applicable. The proposed project is within such limits.

However, while we may agree with plaintiff that the restrictive covenant does not proscribe construction of the proposed project, we cannot agree that such a finding, in turn, *authorizes* such construction. We recognize the general rule that an ordinance controls over a more liberal restrictive covenant. (*Boschelli v. Villa Park Trust & Savings Bank* (1974), 23 Ill. App. 3d 82, 318 N.E.2d 527; *La Salle National Bank v. Village of Palatine* (1968), 92 Ill. App. 2d 327, 236 N.E.2d 1.) It is only where a covenant is more restrictive than the applicable zoning ordinance that the covenant's terms prevail. (*Boschelli v. Villa Park Trust & Savings Bank; Bluett v. County of Cook* (1958), 19 Ill. App. 2d 172, 153 N.E.2d 305.) Thus, where the proposed project is not a permitted institutional use under the ordinance, it cannot be made into a permitted use by way of a restrictive covenant.

■■ This is not to say, however, that the project proposed by Magnus is illegal and could not be constructed under the ordinance at all. Such a conclusion would indicate that the zoning ordinance provisions were clearly arbitrary and unconstitutional since the proposed use is not *per se* inimical to the public health, safety, or welfare. (See *Hazel Wilson Hotel Corp. v. City of Chicago* (1974), 17 Ill. App. 3d 415, 308 N.E.2d 372.) Indeed, the R-5 residential uses would apparently allow construction of such a project as multiple-family dwelling units of a density less than 17.4 units per acre. In the instant case, however, another section of the ordinance prevents issuance of a permit under the multiple-family dwelling provision.

■■ First, section 4.7 of the ordinance contains certain proscriptions concerning the number of principal buildings per lot:

"4.7 NUMBER OF BUILDINGS ON A ZONING LOT

Except in the case of planned developments, not more than one principal detached residential building shall be located on a zoning

lot, nor shall a principal detached residential building be located on the same zoning lot with any other principal building."

Magnus' proposal would clearly violate section 4.7 unless he labeled his proposal a "planned development," which is defined as:

"a tract of land forty (40) acres or more in area, developed under single ownership or control; the development of which is unique and of a substantially different character than that of surrounding areas."

As a planned development Magnus' proposal would not be subject to the strictures of section 4.7. However, planned developments are designated as special uses in R-5 districts under the ordinance. Magnus did not apply for a special use permit under section 6.9 of the ordinance and we will not speculate herein as to whether such a permit would have or should have issued to him. In any event, never having applied for and not having followed the special use permit procedures set forth in the ordinance clearly indicates that no writ of mandamus could issue to order such a permit granted.

In light of our decision today we find it unnecessary to reach Arlington's other contentions. For the foregoing reasons the judgment of the circuit court of Cook County is reversed.

Reversed.

SULLIVAN, P. J., and LORENZ, J., concur.