ETHEL RICHARDSON, Plaintiff-Appellant, *v.* GLENN KITCHIN *et al.,* Defendants-Appellees.

Third District    No. 78-429

Opinion filed August 31, 1979.

James R. Standard, of Standard and Tenold, of Monmouth, for appellant.

Channing Pratt, of Love, Beal, Pratt & Stombaugh, of Monmouth, for appellee City of Monmouth.

Ronald Henson, of Barash & Stoerzbach, of Galesburg, for appellee Glenn Kitchin.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Warren County, Illinois, denying an injunction to prevent construction of a

facility for the slaughter of livestock within a certain zoning district in the city of Monmouth, Illinois.

The original action was brought by Ethel Richardson, owner of a restaurant located at 614 North Main Street and a residence located at 618 North Main Street, Monmouth, Illinois, to enjoin the construction of a slaughterhouse adjacent to the existing locker plant owned by Glenn and Norma Kitchin and located at 600 North Main Street, Monmouth, Illinois.

Kitchins' locker plant has been located on North Main Street for nearly 31 years. It has a North Main address, although access is from Euclid Street. The cutting, freezing, wrapping, and rendering of slaughtered livestock is performed at the locker plant. Kitchins own a slaughterhouse located at R.R.2, Monmouth, where cattle and hogs are slaughtered and then transported to the North Main location.

On or about February 24, 1978, Kitchin received a construction permit from the zoning enforcement officer of the city of Monmouth to allow construction of a slaughterhouse adjacent to their locker plant. Access to the proposed slaughterhouse would be from Main Street or from an alley running north and south and located immediately west of the vacant lot upon which the slaughterhouse would be built and behind the restaurant and residence of Richardson.

Richardson has owned and operated a restaurant at her present location for 15½ years. She also operates a rooming house in her residence. Her property is located approximately 10 feet from the north line of the adjacent property on which Kitchins intend to build the slaughterhouse.

Located in the same block as Richardson's restaurant and Kitchins' locker plant is an auto parts store and a gas station. There are filling stations on each of the four corners of Euclid and Main Streets. In the immediate area there is a hardware store, a thrift shop bakery, a fast food restaurant, a photography shop, a drugstore, another restaurant, and a dry cleaner. There are also some single-family homes.

The Monmouth Zoning Ordinance divides the city into three districts: residential, business, and manufacturing, and each district is divided into divisions; R-1, R-2, R-3; B-1, B-2, B-3; and M-1, M-2. Each district is cumulative so that uses are more restricted in a division with a lower number than in a division with a higher number. They are not so restrictive, however, that a use permitted in an M-1 division is forbidden in a B-3 division. There is some overlapping of uses.

The lot on which the proposed locker plant is to be built is zoned B-3. B-3 is a general service and wholesale business district. Among the permitted uses in a B-3 district is food processing, packaging, and distribution. The only zone in which the slaughter of livestock is specifically permitted is the M-1 division, a limited manufacturing district, where the slaughtering of rabbits and poultry is permitted. The

Municipal Code of the City of Monmouth (sec. 18—104) declares that anyone who slaughters " * * * cattle, sheep, swine, or other animals, except for the use of his own family," within the city of Monmouth is guilty of creating a nuisance.

Richardson filed suit to prevent the construction of the slaughterhouse because it would be a nuisance. The trial court denied a temporary injunction. Hearing was held on the petition for permanent injunction. Richardson presented testimony and then rested. Kitchins introduced three photographs into evidence and presented a motion for judgment at the close of Richardson's case. The City of Monmouth joined in Kitchins' motion and the trial court took the matter under advisement.

Richardson then filed an amended complaint to conform with the proof and ask for a declaratory judgment. The trial court allowed the amendment, but entered judgment for the Kitchins and the City of Monmouth.

The sole issue raised on appeal is whether the trial court erred in entering judgment.

Richardson argues that slaughtering is not a permitted use in the B-3 district. She does not argue that she will be irreparably harmed by the operation of the slaughterhouse. Richardson's theory is that it is immaterial if the decision of the zoning officer is arbitrary or merely misinformed. The test of whether a permit is properly issued should include a literal interpretation of the ordinance. If the language of the ordinance is not clear the court should determine the intent of the ordinance by relating the portion in question to the whole and by determining the reasonable and foreseeable impact of the various suggested interpretations. In order to do that, it is necessary to understand the nature and character of the subject matter and that surrounding it.

The Kitchins argue that if the action of the zoning officer is not arbitrary and capricious and if it is fairly debatable whether the questioned usage is permissible under the ordinance, then the matter is not a proper subject for judicial review.

The City of Monmouth arguments are so similar to those of the Kitchens that they need not be separately stated.

It must be clearly understood that the standard of review in zoning cases is whether the decision of the trial court is contrary to the manifest weight of the evidence. *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899; *LaGrange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388; *Ward v. Illiopolis Food Lockers, Inc.* (1956), 9 Ill. App. 2d 129, 132 N.E.2d 591.

In the instant case there was testimony about the commercial character of the area immediately surrounding the site of the proposed locker plant. There was also testimony that food processing was a

permitted use in the B-3 district. Delmar Streight, zoning officer for the city of Monmouth, testified that after consideration a permit was issued for a slaughterhouse under the food processing category.

■■ Zoning ordinances were developed to enable large numbers of people to live harmoniously in a small amount of space. This sometimes means that we must put up with a certain amount of inconvenience. (*Ward v. Illiopolis Food Lockers, Inc.*) Decisions regarding what uses are permitted in a zoning district and where the boundaries of the districts are to be located are legislative decisions to be made by the municipalities. (*La Grange State Bank v. County of Cook.*) Zoning ordinances, like any other enactments of a legislative body, are presumed to be valid. (*Tomasek v. City of Des Plaines*; *La Grange State Bank v. County of Cook.*) Therefore, the only question we will consider is whether the Monmouth zoning officer properly issued the construction permit under the permitted uses in a B-3 district. We will not consider whether the operation of a slaughterhouse would affect the character of the surrounding area.

■■ The ordinance states, "The following retail business uses and service establishments are permitted * * * Processing * * * limited to the following, * * * Food processing, packaging, and distribution. * * *" (Municipal Code of the City of Monmouth, Illinois, Zoning, sec. 9.3—1.) In interpreting any legislation, we must give its language the ordinary and usual meaning of the words used. (*Twin-City Bible Church v. Zoning Board of Appeals* (1977), 50 Ill. App. 3d 924, 365 N.E.2d 1381.) In the instant case, the term "food processing" is not defined in the ordinance, therefore we must consider the ordinary meaning of the term. Processing is broad enough to include the conversion of cattle into marketable form by slaughtering them. (*Colbert Mill & Feed Co. v. Oklahoma Tax Com.* (1941), 188 Okla. 366, 109 P.2d 504; *Langevin v. Superintendent of Public Buildings* (Mass. App. 1977), 369 N.E.2d 739.) The Supreme Court of Oklahoma consulted Webster's New International Dictionary (2d ed. 1939) to determine the ordinary meaning of the word process. Webster defined the word "process" as "To subject to some special process or treatment * * * Spec. * * * (b) To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, * * *." The Appeals Court of Massachusetts in *Langevin* used the Webster's 1971 edition for the same definition. Thus, we cannot say that the issuance of the construction permit by the zoning officer was arbitrary or capricious. The operation of a slaughterhouse is arguably within permitted uses established by the zoning ordinance.

Since we have determined that the issuance of the construction

permit was proper, we must consider whether the construction of the slaughterhouse should be enjoined because it would be a nuisance.

The operation of a slaughterhouse is not a nuisance per se in the State of Illinois. We are an industrialized society and as a result must accept certain inconveniences in order to receive other benefits. Among those inconveniences is the presence of industrialized processes near our towns. *Ward v. Illiopolis Food Lockers, Inc.* (1956), 9 Ill. App. 2d 129, 132 N.E.2d 591.

■■ If the operation of a slaughterhouse is not a nuisance per se, Richardson, in order to obtain an injunction, must prove that she will suffer irreparable damage if the slaughterhouse is constructed, and this she has failed to do. Her testimony and that given by witnesses testifying in her behalf described the character of the neighborhood rather than the noisome character of a slaughterhouse.

■■ Richardson argues that she need not prove specific, special, or unique damages under the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—15). If we had determined that construction of the slaughterhouse was prohibited by the zoning ordinance, she would be correct, since section 11—13—15 of the Municipal Code applies only when buildings are constructed in violation of local zoning ordinance.

Richardson argues that since section 18—104 of the Municipal Code of the City of Monmouth declares slaughterhouses are a nuisance and prohibited, she may maintain suit under section 11—13—15. We cannot agree in this instance and violation of section 18—104 of the Municipal Code was not pled in either of her complaints, nor was it part of the evidence presented at trial. Section 18—104 is not part of the zoning code, the building code, or the safety code of the city of Monmouth. Section 11—13—15 of the Illinois Municipal Code applies when there is a violation of a local ordinance adopted under divisions 13, 31 or 31.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—1 *et seq.*; 11—31—1 *et seq.*; 11—31—1—1 *et seq.*). These divisions are the Zoning Code, Unsafe Buildings Code, and the Building Code Violations Code.

Therefore Richardson is bound to establish that she would be irreparably damaged by the construction of a slaughterhouse. (*222 E. Chestnut Street Corp. v. LaSalle National Bank* (1958), 15 Ill. App. 2d 460, 146 N.E.2d 717.) Since she failed to do so, we cannot say that the decision of the trial court was contrary to the manifest weight of the evidence.

For the reasons stated above the judgment of the circuit court of Warren County is hereby affirmed.

Affirmed.

STOUDER, P. J., and ALLOY, J., concur.