FIFTH DIVISION

FEBRUARY 8, 2002

No. 1-01-0447

SONYA D. HAWTHORNE, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY. 

)

v. )

)

VILLAGE OF OLYMPIA FIELDS, an Illinois ) 

municipal corporation, and MARY N. CLUMPNER , )

in her official capacity as Olympia Fields )

Administrator, ) HONORABLE

) DOROTHY KIRIE KINNAIRD,

Defendants-Appellants. ) JUDGE PRESIDING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court: 

Defendant, the Village of Olympia Fields (the Village), appeals from an order granting partial summary judgment in favor of plaintiff, Sonya D. Hawthorne (Hawthorne), in connection with plaintiff's complaint against the Village for prohibiting the operation of a day care facility from her home.
(footnote: 1)  On appeal, the Village contends that: (1) the Village's Zoning Ordinance, which limits commercial day care businesses in homes, is valid and not exclusionary; (2) The Village is not pre-empted by State law from exercising land use control over home day care.  The circuit court denied the Village's motion to stay judgment pending appeal.  The Village filed an identical motion in the Appellate court pursuant to Supreme Court Rule 305(h); this motion was taken with the case.
(footnote: 2)  For the following reasons, we affirm the judgment of the trial court and deny the motion for stay.

BACKGROUND

The record reveals the following relevant facts.  The Village of Olympia Fields (Village) is a non-home rule municipality located in southern Cook County.  The Village has a comprehensive Zoning Ordinance (Zoning Ordinance) which establishes permitted and non-permitted uses of property within various zoning districts in the Village.  "Home occupations" are permitted in zoning districts defined as R-1, R-2, and R-3.  the Zoning Ordinance defines "home occupation" as follows:

"Home occupation means any gainful occupation or profession engaged in by an occupant of a dwelling unit as a use which is clearly incidental to the use of the dwelling unit for residential purposes.  The 'home occupation' shall be carried on wholly within the principal building or within a building accessory thereto, and only by members of the family occupying the premises * * *.  There shall be no exterior display, no exterior sign except as allowed by the sign regulations for the district in which such 'home occupation' is located, no exterior storage of materials, no other exterior indication of the 'home occupation,' or variation from the residential character of the principal building, and no offensive noise, vibration, smoke, dust, odors, heat or glare shall be produced.  Offices, clinics, doctors' offices, hospitals, barbershops, beauty parlors, dress shops, millinery shops, tearooms, restaurants, tourist homes, animal hospitals and kennels, among other things, shall not be deem­ed to be home occupations."  Olympia Fields Municipal Code, §§ 22-187, 22-207, 22-227 (Ord. No. 17, as revised May 11, 1981).  

The Child Care Act of 1969 (225 ILCS 10/1, 
et seq.
 (West 1998)) (the Child Care Act), was adopted by the Illinois Legislature prior to the effective date of the 1970 Constitution which established the distinction between home rule and non-home rule units of local government. Under section 2.18 of the Act, "Day Care Homes" are defined as family homes which receive more than three up to a maximum of 12 children for less than 24 hours per day.  A day care home may receive children at any time of the day or night as long as the stay of the child is less than 24 consecutive hours.  A day care home cannot be operated as a "child care facility" without a license or permit issued by the Illinois Department of Children and Family Services (DCFS).

The Child Care Act is comprised of seven sections.  Section 7 sets forth the minimum standards for licensing of facilities and the substantive areas where the DCFS may prescribe standards.  The authorized standards are specifically restricted to 15 enumerated areas, none of which authorizes the DCFS to preempt non-home rule zoning authority.  The DCFS is restricted and mandated by subsection 7(a)5 to prescribe standards for:

"* * * the appropriateness, safety, cleanliness and general adequacy of the premises, including maintenance of adequate fire prevention and health standards conforming to State laws and municipal codes providing for the physical comfort, care and well-being of children received."

 The DCFS must require day care homes to comply with municipal building and fire safety codes, but does not exempt day care homes from other zoning requirements.

The DCFS promulgated regulations entitled "Licensing Standards for Day Care Homes" pursuant to section 3 of the Child Care Act.  89 Ill Adm. Code § 406, 
et. seq.
 (West 1998).  Section 406.13 provides that an owner "alone" may care for up to eight children without any assistant.  If the owner employs an assistant, the owner and the assistant may care for up to 12 children under the age of 12.  Section 406.12 provides that children may remain on the premises for more than 12 hours in any 24-hour period if the parent's employment schedule requires more than 12 hours of day care.  Under section 406.8(k), a day care home must provide an outdoor play area such as the yard of the home.

The DCFS issued a license to Hawthorne to operate a day care home in her residence, effective October 28, 1999, and valid through October 28, 2002.  The license allowed Hawthorne to care for children from the ages of six (6) weeks to twelve (12) years old.  Late in 1999, Hawthorne made an application to the Village to remodel her residence to accommodate her business.  By letter dated December 16, 1999, Village Administrator, Mary Clumpner
(footnote: 3), advised Hawthorne that her proposed operation of a day care home did not fall within the definition of "home occupation" under the Zoning Ordinance. The letter stated that Hawthorne's proposal to have another employee work at Hawthorne's residence did not conform to the Zoning Ordinance; that parents dropping off and picking up as many as fourteen children would be an exterior indication of the home occupation; and that a second kitchen for purposes of the operation would change the residential character of the principal building.  In addition, the use of the back yard for an outdoor play area would also be contrary to the requirements of the Zoning Ordinance. 

 On January 5, 2000, Hawthorne filed a petition for zoning variance, requesting two forms of relief.  First, Hawthorne requested a variance to allow the operation of a day care home as a home occupation.  Second, Hawthorne requested a variance to allow a non-family member employee to work at the facility.  On January 24, 2000, the Village board of Trustees conducted a public hearing on the variance requests.  A number of residents expressed concerns relative to the proposal a the public hearing.  In particular, they were concerned with the increase in traffic, disruption of residential tranquility, and employment of non-residents in the home.  Following the hearing, the President and Board of Trustees denied Hawthorne's requests for the variances.

Hawthorne filed  a verified complaint for declaratory and injunctive relief.  Subsequently, Hawthorne filed an eight count complaint alleging: (1) the Village acted arbitrarily, capriciously and unreasonably when it misinterpreted the Zoning Ordinance in determining home day care is not a "home occupation" permitted in residences; (2) the Village is without lawful power to wholly exclude home day care from the Village; (3) the Child Care Act and the implementing DCFS regulations preempt the inconsistent or prohibition of home day care by non-home rule municipalities; (4 & 5) Hawthorne's state license is a species of property entitled to protection by the fifth amendment of the United States Constitution and Article I, Section 15 of the Illinois constitution, and the Village's conduct in allegedly prohibiting her from deriving "any use of enjoyment" of the license is an unconstitutional taking; (6) the Village treated Hawthorne, as a home day care provider, differently from persons engaged in similarly situated home occupations without any rational basis, thereby denying her equal protection of the laws under Article I, Section 2 of the Illinois Constitution; (7) the Village's interpretation of its zoning ordinance violates Dillon's Rule (non-home-rule municipalities may only exercise powers granted by law or by the Illinois Constitution (see Ill. Const.1970, art. VII, sec. 7)), and therefore deprives Hawthorne of her property without due process of law; and (8) She is similarly deprived of due process under the 14th amendment to the U. S.  Constitution.

Hawthorne filed a motion for partial summary judgment on counts I through V of her amended complaint, and the Village filed a cross-motion for partial summary judgment on counts II through V.  At a hearing on the cross-motions, Hawthorne conceded that the Village did not misinterpret its Zoning Ordinance in defining "home occupation," and the trial court dismissed count I as moot.

On December 11, 2000, the trial court gave an oral decision on the cross-motions and requested that counsel draw up a written order reflecting its decision.  On December 15, 2000, the trial court entered a written order, but failed to include language pursuant to Illinois Supreme Court Rule 304(a).  On January 17, 2001, the trial court entered a final written order, making the preliminary injunction permanent, and adding the Rule 304(a) language.

The final order granted summary judgment in favor of Hawthorne on Count II, finding that the Zoning Ordinance constitutes exclusionary zoning and is null and void.  The trial court granted summary judgment in part in favor of Hawthorne on count III, finding:  (1) the Village, as a non-home rule entity, is partially preempted by the Child Care Act and the DCFS regulations from regulating day care homes under the Zoning Ordinance or otherwise; (2) to the extent that any ordinance of the Village conflicts with the Act and the DCFS regulations it is preempted and null and void; (3) the Village is permanently enjoined from regulating day care homes under the Zoning Ordinance, or otherwise, in a manner that conflicts in any way with the Act or the DCFS regulations; and (4) Hawthorne is entitled to operate a day care home at her residence in the Village pursuant to her DCFS license.  The Village filed a timely notice of appeal from this order on January 29, 2001.

OPINION

Initially, the Village contends that the trial court erred in determining that the Zoning Ordinance, which prohibits or limits day care business in homes, is exclusionary.  The Village frames this case as one of first impression.

 This case involves the construction of a municipal ordinance and a state statute.  Our standard of review is 
de novo
, as the interpretation of ordinance and statutes are questions of law.  
North Avenue Properties, L.L.C. v. Zoning Board of Appeals of the City of Chicago
, 312 
 
Ill. App. 3d 182, 726 N.E.2d 65 (2000).

The Village contends that it has the right, as a non-home rule municipality, to regulate the operation of businesses out of homes under its police power.  Under Dillon's Rule, a non-home rule municipality only possesses those powers which are specifically conferred by the Illinois Constitution or by statute.  
People 
ex. rel.
 Ryan v. Village of Hanover Park
, 311 
 
Ill. App. 3d 515, 724 N.E. 2d 132 (1999).
(footnote: 4)  To that end, 

"Municipalities possess only those powers expressly granted, powers incident to those expressly granted, and powers indispens­able to the accomplishment of the declared objects and purposes of the municipal corporation."  
Pesticide Public Policy Foundation v. Village of Wauconda
, 117 Ill. 2d 107, 112, 510 N.E. 2d 858 (1987); accord 
Village of Wauconda v. Hutton
, 291 
 
Ill. App. 3d 1058, 1060, 684 N.E. 2d 1364 (1997).  

Municipalities cannot adopt ordinances "under a general grant of power which infringe upon the spirit of the State law or are repugnant to the general policy of the State."  
Village of Mundelein v. Hartnett
, 117 
 
Ill. App. 3d 1011, 1015, 454 N.E. 2d 29 (1983).  The Village argues that it's statutory authority to regulate home occupations is derived from section 11-13-1 of the Illinois Municipal Code (Municipal Code), which provides that the corporate authorities of a municipality may pass and enforce all necessary police ordinances.  Section 11-13-1 confers the following powers onto a municipality:

"* * * (3) to regulate and limit the intensity of the use of lot areas, and to regulate and determine the area of open spaces, within and surrounding such buildings; (4) to classify, regulate and restrict the location of trades and industries and the locations of buildings design­ed for specified industrial, business, residential, and other uses; (5) to divide the entire municipality into district of such number, shape, area, and of such different classes (according to use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces, or other classification) as may be deem­ed best suited to carry out the purposes of this Division 13; (6) to fix standards to which buildings or structures therein shall conform; (7) to prohibit uses, buildings, or structures incompatible with the character of such districts * * * ."  65 ILCS 5/11-1-1 (West 1998).

The Village initially argues that insuring a neighborhood's "residential tranquility" is a permissible goal for a land use project "addressed to family needs." See, 
e.g.
, 
Village of Belle Terre v. Boraas
, 416 U.S. 1, 9, 39 L. Ed. 2d 797, 804, 94 S. Ct. 1536 (1974); 
Singer v. Highland Park
, 31 
 
Ill. App. 3d 1071, 335 N.E.2d 585 (1975).  The Village explains, citing authority outside of Illinois' jurisdiction, that the underlying intent of regulating home occupations is to permit "customary home occupations," while preserving the residential character of residential areas. Thus, consideration is given to such elements as the amount of street traffic, the use of display signs, the number of cars parked at the residence and the percentage of floor space occupied by the business.  
DeShazo v. City of Huntsville
, 416 So.2d 1100, 1102 (Ala. Crim. App., 1982).  In 
Schofield v. Zoning Board of Adjustment of the Township of Dennis
, 169 N.J. Super. 150, 404 A.2d 357 (N.J. Super. A.D.,1979), a New Jersey court held that the conduct of a day care center for from 12 to 18 children in a residence did not constitute a home occupation within the provisions of a zoning ordinance in a zone restricted primarily to one- and two-family dwellings.  There, the court rejected the argument made by the plaintiffs that the day care center was analogous to babysitting:

"Assuming that 'babysitting' could be regarded as a home occupation, that activity does not customarily comprehend the simultaneous care of 12 to 18 children at a time. [Citations omitted].  And in respect to the requirement that the home occupation be clearly incidental to the use of the building as a residence, it appears perfectly obvious that this was not so when 1561 square feet of the total of 1671 in the building was used for day care purposes * * *."  
Schofield
, 169 N.J. Super. at 154, 55.

The Village further relies on  
DuPage County v. Elliott
, 85 
 
Ill. App. 3d 225, 406 N.E. 2d 592 (1980).  There, the defendant sought to use her home to conduct up to five individual social counseling sessions per week and two group sessions with nine individuals per week and occasional weekend overnight counseling.  This court held that the purpose of home occupations ordinances is to accommodate "a traditional and recognized custom of practicing certain occupations within the home."  The court found that while counseling was a customary home occupation (similar to an attorney or minister), "the intensity of the non-residential use is not conducive to the maintenance of the residential character of the neighborhood and is not incidental to its residential use."  85 
 
Ill. App. 3d at 228.  

The Village further argues, based on authority outside of Illinois jurisdiction,  that the limitation against non-family members working in a home occupation facility is also reasonable.  
In a Virginia case, the court held that such restrictions "serve to reduce traffic and parking problems that might be caused by employees traveling to and from work * * * ."  
City of Manassus v. Rosson
, 224 Va. 12, 294 S.E.2d 799, 
appeal dismissed
, 459 U.S. 1166, 74 L. Ed. 2d 1009, 1035 S. Ct. 809
 
(1982); see also 
Doersam v. City of Gahanna
, 1997 607473 (Ohio 10th Dist) (unpublished); 
St. Louis County v. Kienzle
, 844 S.W.2d 118 (Mo. App. E.D., 1992).

Hawthorne responds that the "home occupations" section of the Zoning Ordinance wholly excludes the lawful business of home day care from the municipality's boundaries in contravention of Illinois law: "nowhere does the legislature grant to municipalities the power to wholly restrict a lawful business from their boundaries."  
Suburban Ready-mix Corp. v. Village of Wheeling
, 25 Ill. 2d 548, 552, 185 N.E. 2d 665, 667 (1962); 
Dolson Outdoor Advertising Co., v. City of Macomb
, 46 
 
Ill. App. 3d 116, 121, 360 N.E. 2d 805, 808 (1977).  Under Illinois law, a zoning ordinance is impermissibly exclusionary if the affected activity is "effectively prohibited anywhere within the municipal limits."  
Oak Forest Mobile Home Park, Inc. v. City of Oak Forest
, 27 
 
Ill. App. 3d 303, 318, 326 N.E. 2d 473 (1975).  

Our supreme court invalidated an exclusionary zoning ordinance in 
People 
ex. rel.
 Trust Co. of Chicago v. Village of Skokie
, 408 Ill. 397, 97 N.E. 2d 310 (1951).  There, a Skokie zoning ordinance prohibited the construction or operation of outdoor motion picture theaters within Skokie's village limits.  The court held that the passage of the amendment to the Skokie zoning ordinance, adopted on September 12, 1949, after plaintiffs' application for a building permit had been denied, and after complaint had been filed, lead to the unescapable conclusion that suddenly and without any reasonable explanation the amendment was adopted for the express purpose of outlawing the proposed theater, an admittedly lawful business.  "It was aptly stated by the trial judge that, in the powers conferred upon municipal authorities, nowhere does the legislature grant to municipalities the power to wholly restrict a lawful business from their boundaries." 
Village of Skokie,
 408 Ill. at 404.  The court found that  the exhibits offered by both parties demonstrated that "the value of the manufacturing uses to which a great portion of the property in the area under consideration had been devoted would be diminished in value very slightly, if at all, by the construction and operation of a drive-in motion picture theater at the location suggested."  The court concluded that the passage of the amendment to the zoning ordinance of the village of Skokie was unreasonable, arbitrary and had no firm basis in, or relation to, the public health, morals, safety or public welfare. 
Village of Skokie,
 408 Ill. at 404.

This court has similarly invalidated ordinances prohibiting concrete mixing plants and equipment from all districts (
Suburban Ready-Mix Corp
.); excluding trailer coach parks (
High Meadows Park, Inc. v. City of Aurora
, 112 
 
Ill. App.2d 220, 228, 250 N.E. 2d 517, 521 (1969)); prohibiting shelter care homes (
Hazel Wilson Hotel Corp. v. City of Chicago
, 17 
 
Ill. App. 3d 415, 308 N.E. 2d 372 (1974); and prohibiting off-premise signs (
Dolson
).

The Village responds that the Zoning Ordinance does not provide a blanket prohibition against day care facilities, but only a "home day care facility" in a residential district.  Thus, the Village argues, unlike the cases cited above, the Zoning Ordinance is not exclusionary.

However, the General Assembly and the DCFS both recognize the "day care home" as a distinct kind of child care facility from the "day care center," and the State of Illinois has determined that parents are entitled to have "day care home,"as an alternative form of day care for their children.  "
Home
 day care," by definition, can only be provided in a residence.

The trial court found that: (1) the State of Illinois recognizes day care homes as a form of child care distinct from other facilities for the provision of child care; (2) the State, through the  Child Care Act, and implementing the DCFS regulations, recognizes home day care as a lawful and legitimate activity that is not 
per se
 inimical to the public health, safety or welfare; and (3) the effect of the Zoning Ordinance is to prohibit the operation of day care homes in the Village.  

Whether the Zoning Ordinance excludes day care homes is not a mere question of semantics as the Village would have this court believe.  As explained above, a distinction exists between  "home day care" and a "day care center," as evidenced by both State law and State regulations.  The Village has provided no controlling authority in support of its position, but rather, case law from other jurisdictions. On this basis we find that the trial court correctly found that the Zoning Ordinance improperly operates to completely exclude the valid business of a day care home. 

 Next, the Village contends that the trial court erred in determining that the Village, as a non-home rule entity, is partially preempted by the Child Care act of 1969 and the DCFS regulations promulgated thereunder from regulating day care homes under the Zoning Ordinance. 

The Village contends that the Child Care Act is not a preemptive enabling authorization statute.  The Village argues that because the Child Care Act is codified in Chapter 225 of the Illinois Compiled Statutes, entitled "Professions and Occupations," it is a business regulation and licensing statute operating concurrently with zoning law.  The Village argues that none of the statutes regulating other professions and occupations under 225 ILCS preempt municipalities from exercising their zoning regulations over the location of such businesses.  The Village further argues that under the Child Care Act, one who operates a child care facility without a valid license or violates any provision of the Act is subject to a business offense punishable by a fine of up to $10,000 per day.  225 ILCS10/11, 10/18 (West 1998).  

The Village explains that when the Child Care Act became effective in 1969, the 1970 Illinois Constitution was not in effect.  Home rule powers did not exist and regulation exempting the City of Chicago were effectuated by way of a population carve-out.  Thus, in 1969, a municipal authority to regulate home occupations, including home day care facilities, was ingrained in local zoning ordinances as well as the case law.  The Village frames the issue to this court as whether in 1969, the General Assembly intended to divest all municipalities in this State, including Chicago, of the authority to regulate, limit or prohibit this particular business as a "home occupation" in residential zones.  The Village states that there is nothing in the Child Care Act either expressly or implicitly prohibiting municipalities from enforcing their zoning ordinance over day care facilities. 

Hawthorne respond by citing 
Pesticide Public Policy Foundation v. Village of Wauconda
, 117 Ill. 2d 107, 510 N.E. 2d 858 (1987).  There, our supreme court held that a Village ordinance regulating users of pesticides was preempted by the Illinois Pesticide Act of 1979 and the Structural Pest Control Act.  The court stated that by these Acts, the State "legislature has determined which persons seeking to apply pesticides are to be regulated through licensing, and has established requirements for obtaining the appropriate license."  
Pesticide
, 117 Ill. 2d at 119.  The court noted that:

"Taken in concert, the statutes regulating pesticides address the label­ing, use, distribution, purchase, registration and application of pesticides, in addition to limiting the harmful effects of pesticides on the environment.  In short, the acts present a broad and detailed scheme designed to regulate the field of pesticide use in all respects.  Although the Pesticide Act, together with the Pest Control Act, has divided its expansive authority over pesticides among three entities, all of them are agencies of State government;  notably absent from the acts is any provision delegating authority to, or allowing regula­tion by, units of local government.  (Cf.  
Illinois Liquor Control Com. v. City of Joliet
, 26 Ill. App. 3d 27, 324 N.E.2d 453 (1975) (broad delegations of power throughout act showed legislative desire to allow local control).)  It is apparent from the acts that the General Assembly has intended that the State occupy exclusively the field of pesticide regulation." 
 Pesticide Public Policy Founda­tion
, 117 Ill.2d at 116.

Hawthorne further cites 
O'Connor v. City of Rockford
, 52 Ill. 2d 360, 288 N.E. 2d 432 (1972) (Illinois Environmental Protection Act provided for operation of landfills only upon issuance of the Illinois Pollution Control Board; 
American Smelting & Refining Co. v. County of Knox
, 60 Ill. 2d 133, 324 N.E. 2d 398 (1974) (Knox and Peoria counties could not create zoning requirements on the reclamation of strip-mined land over the State administered Surface-Mined Land Conservation and Reclamation Act); and 
County of Kendall v. Avery Gravel Co.
, 101 Ill. 2d 428, 463 N.E. 2d 723 (1984) ( IEPA regulations preempted non-home rule unit Kendall County's zoning ordinances relating to strip mining).
(footnote: 5)  

The Village relies on a single Illinois case, 
T & S Signs, Inc., v. Village of Wadsworth
, 261 
 
Ill. App. 3d 1080, 634 N.E. 2d 306 (1994).  There, the court held that the Illinois Highway Advertising Control Act did not preempt the regulation of outdoor advertising by a non-home-rule municipality.  The 
T & S Signs
 court distinguished its case from the preemption cases cited by Hawthorne by finding that Section 7 of the Highway Advertising Control Act specifically authorizes a municipality to enact regulations concerning outdoor advertising, and that in the absence of such a provision, "a non-home-rule unit's authority to regulate in this field would be questionable."  
T & S Signs
, 261 
 
Ill. App. 3d at 1091.

T & S Signs
 is distinguishable from the present case.  The Child Care Act enacts a com­pre­hensive regulatory scheme fully regulating all aspects of home day care in Illinois, similar to the statutes preempting the zoning ordinances in the cases cited above. In addition, the Child Care Act charges only one state agency, the DCFS, with the administration, regulation, oversight and licensing of day care facilities in Illinois. Thus, the intent of the legislature is that the State be the exclusive regulator of child care in Illinois.  The Child Care Act cannot be interpreted as a mere business regulation statute.
(footnote: 6)  The statutes cited in the above cases, which were found to preempt non-home rule zoning ordinances, also fall under Chapter 225 of the Illinois Compiled Statutes.

Here, the trial court concluded that the Village is "partially" preempted from regulating day care homes.  By partially, the trial court explained that the Village may not regulate day care homes in a manner that in any way conflicts with the Child Care Act or the DCFS regulations. The trial court's  finding is consistent with the law on preemption as it relates to zoning ordinances enacted by non-home-rule units, as described above.

For the reasons cited above, we therefore affirm the judgment of the trial court.

Affirmed.

REID, J., concurs.

QUINN, J., dissents.

JUSTICE QUINN, specially concurring in part and dissenting in part:

I concur in part and dissent in part.  The majority correctly notes that, as a non-home rule municipality, Olympia Fields possesses only those powers which are specifically conferred by the Illinois Constitution or by statute.  
People 
ex rel
. Ryan v. Village of Hanover Park
, 311 Ill. App. 3d 132, 724 N.E.2d 132 (1999).  The Village argues that under section 11-13-1 of the Illinois Municipal Code, 65 ILCS 5/11-13-1 (West 1998), the Village has the zoning power to (a) regulate and limit the intensity of the use of lot areas; (b) classify, regulate and restrict the location of trades and business, residential and other uses; and (c) divide the entire municipality into districts of such different classes.  The Village relies most strongly on subsection (7) which allows municipalities "to prohibit uses, buildings or structures incompatible with the character of such districts."  This authority has been upheld by this court:  "Decisions regarding what uses are permitted in a zoning district and where the boundaries of the districts are located are legislative decisions to be made by the municipalities."  
Richardson v. Kitchin
, 75 Ill. App. 3d 961, 964, 394 N.E.2d 796 (1979).   

The Village argues that an ordinance "may impose more rigorous or definite regulations in addition to those enacted by the state legislature so long as they do not conflict with the statute."  
Village of Wauconda v. Hutton
, 291 Ill. App. 3d 1058, 1060, 684 N.E.2d 1364 (1997).  A municipality may exercise concurrent police power provided the regulations are not inconsistent with the statute.  
Hutton
 at 1060-61.  However, 
Hutton
 also held "while non-home-rule municipalities have the authority to enact ordinances, such ordinances may in no event conflict with state law or prohibit what a state statute expressly permits."  
  
Hutton
 at 1060.  Consequently, our decision should turn on whether the ordinance in question conflicts with the state statute. 

The pertinent portion of the Village's Zoning Ordinance provides: "Home occupation means any gainful occupation or profession engaged in by an occupant of a dwelling unit as a use which is clearly incidental to the use of the dwelling unit for residential purposes.  The 'home occupation' shall be carried on wholly within the principal building or within a building accessory thereto, and only by members of the family occupying the premises..." Olympia Fields Municipal Code § § 22-187, 22-207, 22-227 (Ord. No. 17, as revised May 11, 1981).    

The Child Care Act of 1969, 225 ILCS 101 
et seq
. provides:

§ 218.  "Day care home" means family homes which receive more 

than 3 up to a maximum of 12 children for less than 24 hours per day.  The 

number counted includes the family's natural or adopted children and all other 

persons under the age of 12.  The term does not include facilities which receive 

only children from a single household.     

The Village notes that Hawthorne's application for a zoning variance stated that she wished to use her home to provide care for up to 14 children.  This would not be allowed under the definition of "day care home" and the trial court's order cannot be read to allow more than 12 children in the home.

The Act defines "day care homes" as being "family homes."  As "family homes" by definition are located in residential areas, I agree with the majority that the Village could not use its zoning ordinance to preclude "day care homes" from its residential areas.  I note that at oral argument the Village denied that it attempted to do so.  The Village urges us to focus on the actual conflict between the zoning ordinance and the Child Care Act.

The trial court specifically held that the municipality's regulations which conflicted with the Act and the DCFS regulations included: (1) restrictions on the number of children who may be cared for in a day care home; (2) restrictions on the employment of non-family members to assist in the care of children in a day care home; and (3) restrictions limiting operations of a DCFS-licensed day care home to the building portion of the day care home operator's property.  The Village argues, "Since these restrictions are the essence of the Village's home occupation ordinance, the circuit court effectively held the Village was totally preempted from regulating home day care pursuant to its rightful authority."

In holding that "the trial court's finding is consistent with the law on preemption as it relates to zoning ordinances enacted by non-home rule units," the majority also treats the issue before us as one of preemption.  While I agree that this is the issue, I disagree with the majority's holding that the Child Care Act has preempted the field of day-care regulation to such an extent that a municipality cannot affect it by zoning limitations.

As the majority themselves point out, under the Child Care Act, "the authorized standards are specifically restricted to 15 enumerated areas, none of which authorizes the DCFS to preempt non-home rule zoning authority...The DCFS must require day care homes to comply with municipal building and fire safety codes, but does not exempt day care homes from other zoning requirements."  (page 3 of opinion).  Similarly, the Village cogently argues that the decision in 
County of DuPage v. Elliott
, 85 Ill. App. 2d 225, 406 N.E.2d 592 (1980) appropriately set the standard for determining whether a particular use "is clearly incidental to the use of the dwelling unit for residential purposes."  There, this court held that the intensity of the use of a home for five individual counseling sessions per week and two group sessions with nine individuals per week plus weekend sessions for groups of 15 people approximately ten times a year was not conducive to the maintenance of the residential character of a neighborhood and therefore was not incidental to residential use.

The Village also cites several cases from other jurisdictions.  In 
Schofield v. Zoning Board of Adjustment of the Township of Dennis
, 169 N.J. Super. 150, 404 A.2d 357 (1979) the court held that providing a day care center for 12 to 18 children did not constitute a "home occupation" as it is radically different than "babysitting" and such use was not incidental to residential use.  In 
Board of Commissioners of Ross Township v. Harsch
, 78 Pa. Cmwlth.  395, 467 A.2d 1183 (1983), the court held that the state's statute addressing licensing of family day care homes did not preempt the field of day-care regulation to such an extent but a township could not affect it by zoning limitations; but a township ordinance which effectively excluded all day-care facilities from residential areas was exclusionary and therefore invalid.  In 
City of Manassas v. Rosson
, 224 Va. 12, 294 S.E.2d 799 (Virginia, 1982), the Virginia Supreme Court held that a zoning ordinance which restricted the right of limited home occupation in residential districts to immediate family residing in the dwelling was substantially related to the promotion of public health, saftey and welfare. 

This is a case of first impression in Illinois.  The issue of preemption of local zoning regulations by the Child Care Act has never been ruled upon by an Illinois court of review.  There is also no legislative history available to assist in interpreting the Act.  Because of this lack of Illinois authority, it is proper for this Court to consider out-of-state authority addressing the same issue.  Comparable court decisions of other jurisdictions, while not determinative of issues before an Illinois court, are persuasive authority and entitled to respect.  
In re Marriage of Raski
, 64 Ill. App. 3d 629, 633, 381 N.E.2d 744 (1978).  It is well settled that in the absence of an Illinois determination on a point of law, the courts of this state will look to other jurisdictions as persuasive authority.  
Cooper v. Hinricks
, 10 Ill. 2d 293 (1957).    

While the majority chides the Village for strongly relying on cases from other jurisdictions, neither Hawthorne nor amicus cite a 
single
 case from any jurisdiction holding that day care homes are exempt from zoning regulation or that state regulations of day care providers preempts zoning regulations.   The majority rely on Illinois cases where state statutes were found to preempt local ordinances.  These include the operation of landfills; reclamation of strip-mined land and use of pesticides.  I believe that these cases are factually inapposite.  As to the regulation of pesticides, our supreme court looked at the Pesticide Act and the Pest Control Act and concluded: "(i)t is apparent from the acts that the General Assembly has intended that the State occupy exclusively the field of pesticide regulation."  
Pesticide Public Policy Foundation v. Village of Wauconda
, 117 Ill. 2d 107, 116, 510 N.E.2d 858 (1987).  The provisions of the Child Care Act do not make it apparent that the legislature intended that the State exclusively occupy the field of day care home regulation.  

The Village argues persuasively, that in determining the issue of preemption, we should adopt a multi-part test.  
In Blue Earth County Park Procedures v. County of Blue Earth
, 558 N.W.2d 25 (1997), the Minnesota Court of Appeals   articulated a four-part test for determining whether a statutory regulation so "occupies the field" as to preempt municipal zoning   authority.  (1) What is the subject matter being regulated?  (2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern? (3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern? (4) Is the subject matter itself of such nature that local regulation would an have unreasonably adverse effect upon the general public?    

I agree that the Village could not exclude all day care homes from residential areas, but I do not believe that the ordinance in question does that.  While I do not believe that the ordinance arises to the level of exclusionary zoning, I do believe that portions of it do conflict with the Child  Care Act.  Based on the holding in 
Village of Wauconda v. Hutton
, 291 Ill. App. 3d 1058,  I would resolve these conflicts as follows.

(1) As to the ordinance's restriction limiting operations of a DCFS-licensed day care home to the building portion of the day care home operator's property, this directly conflicts with DCFS' requirement in section 406.8(k) that such a home provide an outdoor play area.  While neighbors may indeed complain about the noise made by children at play, this type of activity is incidental to the use of the home as a residential property and it therefore cannot be prohibited by the zoning ordinance.

(2) The ordinance's restriction prohibiting non-family members from being employed to work in the home is rational and is substantially related to the promotion of public health, safety and welfare for the reasons cited in 
City of Manassas v. Rosson
, 294 S.E.2d 799.  It is therefore enforceable.  

(3) As to the allegation that the zoning ordinance places restrictions on the number of children who may be cared for in a day care home, on its face, the ordinance does not restrict the number of children who may be cared for in a day care home.  The Child Care Act requires a second person to assist in the supervision of more than eight children.  If no qualified family member is available to fill this position, it is the Child Care Act which would require that there be a limit of eight children present in the home.

For the above reasons, I concur in part and dissent in part from the majority's opinion.      

FOOTNOTES
1:
In making our determination, we considered an 
amici curiae
 brief, filed in support of the plaintiff by the following non-profit organizations: Voices for Illinois Children, Day Care Action Council of Illinois, The Carole Robertson Center for Learning, The Human Development Center, Women's Business Development Center and The Women's Self-Employment Project.

2:
In its memorandum in support of its motion for stay, the Village states that it was advised by Hawthorne that as of the date of the filing of the stay, Hawthorne was providing day care to two children in her home.

3:
Defendant notes that Mary Clumpner is not the current Village Administrator. 

4:
The Constitution of 1870 prohibition of local or special laws for incorporating cities, towns and villages implied that the benefit of any law for that purpose should be available upon the same conditions to all persons in the same situation;  that the requirements of the law for persons in one locality should not be different from the requirements for persons similarly situated in another locality.  
People ex rel. Hoeinghaus v. Campbell
, 285 Ill. 557, 121 N.E.183 (1918). Until the 1970 Constitution, cities and villages had no inherent powers and could not act legally in any matter unless expressly or impliedly authorized by state statute.  See, 
e.g.
, 
Ives v. City of Chicago
, 30 Ill.2d 582, 198 N.E.2d 518 (1964).  Under this rule of "legislative supremacy," statutory grants of power were narrowly construed in accordance with so-called 'Dillon's Rule': "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in Express words; second, those Necessarily or fairly implied in or Incident to the powers expressly granted; third, those Essential to the accomplishment of the declared objects and purposes of the corporation,--not simply convenient, but indispensable.  Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."  Dillon, Municipal Corporations (5th ed. 1911), 448--50. 

5:
Hawthorne also cites similar case filed in the circuit court of Cook County, wherein Judge Lester Foreman ruled that the Village of Flossmoor, a non-home-rule entity, was preempted by the Child Care Act and the regulations promulgated by the DCFS from regulating day care homes under a similar zoning ordinance.  
Rheams v. Village of Flossmoor
, No. 95 CH 3485 (Cir. Ct. Cook County, Oct. 17, 1995).  The Village of Flossmoor did not appeal from this ruling. 

6:
The Amicus brief sets forth in great detail the distinction between rules and regulations for day care centers and day care homes.