No. 2--04--1040

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

VICTORY AUTO WRECKERS, INC., ) Appeal from the Circuit Court

KENNETH WEISNER, and KYLE ) of Du Page County.

WEISNER, )

)

Plaintiffs-Appellees and )

Cross-Appellants, )

)

v. ) No. 04--MR--20

)

THE VILLAGE OF BENSENVILLE; )

COMMUNITY DEVELOPMENT )

COMMISSION; JOSEPH E. DUFFY, as )

Acting Director of Planning, Zoning, and )

Building; PATRICIA A. JOHNSON, )

ARTHUR MARKOWSKI, LINDA M. )

WILHELM, BRADLEY GIBBS, TOM )

ZALESKE, and NORBERT BANASYNSKI, )

as Commissioners of the Community )

Development Commission; and ELIZABETH )

HIBNER, DAVID WHITE, JACQUES )

GOURGUECHON, JOHN LUSTRO, )

FRANK KOSMAN, JACK BARBA, KEITH )

TOMCZAK, RICHARD YOUNG, GEORGE )

NOBEL, JOSEPH ABEL, ADAM LABKON, )

DENNIS N. WONDERLICK, and DALE )

KLESZYNSKI, as Parties of Record to the )

Administrative Proceedings, )

) Honorable

Defendant
s
-Appellant
s
 and ) Bonnie M. Wheaton, 

Cross-Appellees. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court 
:

In this zoning ordinance case, defendants, Village of Bensenville 
et al.
 (Bensenville), appeal the trial court's order reversing a decision by the Bensenville Community Development Commission (CDC) in favor of Bensenville and against plaintiff Victory Auto Wreckers (Victory).  Initially, we note that Victory has abandoned its cross-appeal.  We affirm.

The following facts are taken from the record.  Victory has been in business in Bensenville at the same location since 1948.  Until 2002, the use of the subject property was authorized under Bensenville's zoning ordinance in the I-3 heavy industrial district.  The present owners of Victory are plaintiffs Kenneth Weisner and Kyle Weisner.  On April 16, 2002, Bensenville amended its zoning ordinance to create a new zoning classification, I-4 general industrial district.  The new ordinance contains an amortization provision, which in essence makes junkyards, incinerators, wrecking yards
, and outdoor storage facilities nonconforming uses in I-3 districts and directs those uses to cease operation in I-3 districts within two years, except for the latter use, which must cease within five years.

On September 13, 2002, Bensenville notified Victory that it considered its use of the subject property to be as a wrecking yard and gave Victory until April 26, 2004, to terminate its current use of the property.  No other property owner in the I-3 district was similarly notified.

On December 13, 2002, Victory requested a zoning-use interpretation. Bensenville, by its attorney, opined that Victory's principal use of the property was as either a junkyard, a wrecking yard, or an outdoor storage facility
 
and, therefore, was subject to the amortization provisions of the new ordinance.

Victory appealed Bensenville's attorney's interpretation to the CDC and lengthy hearings followed.  The relevant evidence from these hearings is contained in the discussion below.

After considering the evidence and arguments, the CDC issued a written opinion finding that Victory's use of the property was as a wrecking yard, a subset of junkyard, and not as a recycling center or outdoor storage facility.  Victory
 then sought appeal in the trial court.  The trial court reversed the CDC's judgment, finding that Victory's principal use of the subject property was as a recycling center and that the property was not subject to amortization under the Bensenville zoning ordinance.  Bensenville filed this timely appeal.

On appeal, Bensenville urges this court to review the CDC's decision using the clearly erroneous standard.  
Victory argues that we should apply a 
de novo
 standard to the issues of law and a manifest weight standard to the issues of fact.  We agree with Victory.

An administrative agency's findings on questions of law are not binding on the courts and are reviewed 
de novo
. 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191,
 205 (1998).  Thus, we will give no deference to the CDC's determination of the meaning of the terms at issue in Bensenville's ordinance.  An administrative agency's factual findings are deemed to be 
prima facie
 true and correct and may be set aside only if they are against the manifest weight of the evidence.  735 ILCS 5/3--110 (West 2000); 
Belvidere
,181 Ill. 2d at 
204.  Factual findings are against the manifest weight of the evidence only where all reasonable and unbiased persons would agree it is clearly evident the administrative agency erred and should have reached the opposite conclusion.  
Caterpillar, Inc. v. Illinois Commerce Comm'n
,  348 Ill. App. 3d 823, 828 (2004).  In contrast, a clearly erroneous standard is applied to those cases that involve an examination of the legal effect of a given set of facts or a mixed question of law and fact.  
Belvidere
, 181 Ill. 2d at 205.

In this case, the facts are not in dispute.  The dispute before this court is which facts the CDC deemed pertinent in making its findings, how the CDC interpreted the Bensenville zoning ordinance, and how it applied the facts to the zoning ordinance.  Thus, we will review 
de novo
 the CDC's interpretation of the Bensenville zoning ordinance, and then we will determine whether its application of the ordinance to the facts is clearly erroneous.

On appeal, Bensenville argues that the trial court erred by reversing the CDC's determination.  Bensenville argues that the CDC properly found that Victory is subject to amortization under section 10--16--3H of Bensenville's zoning ordinance and properly found that the principal use of Victory's property is as a wrecking yard and a junkyard and not as a recycling center as those terms are defined by section 10--2--3 of Bensenville's zoning ordinance.  Village of Bensenville Zoning Ordinance §§10--16--3H, 10--2--3 (amended April 16, 2002).  We disagree with Bensenville.

Our role when construing an ordinance is well established. In construing the challenged ordinance, we set forth and apply the same principles of construction that we would in construing a statute.  
Forest Preserve District v. Loren & Gisela Brown Family Trust
, 323 Ill. App. 3d 686, 692 (2001). Our duty is to determine and give effect to the intent of the legislative
 
authority
. 
People v. Effler
, 349 Ill. App. 3d 217, 219 (2004).  To determine legislative intent, we look to the language of the enactment
, because it is the most reliable indicator of the legislative
 objectives.
  
In re Detention of Lieberman
, 201 Ill. 2d 300, 308 (2002).  We afford the language its plain and ordinary meaning.  
Lieberman
, 201 Ill. 2d at 308.  If the language is unambiguous, we will not depart from the language and read into it exceptions, limitations, or conditions. 
People v. Lavallier
, 187 Ill. 2d 464, 468 (1999).
  We review 
de novo
 the interpretation of an ordinance
.  
Hawthorne v. Village of Olympia Fields
, 328 Ill. App. 3d 301, 306 (2002). 

The 2002 amendment to Bensenville's zoning ordinance included a new amortization provision for nonconforming uses listed in section 10--16--3H.  The amendment provides that the nonconforming uses must cease.  Junkyards and wrecking yards are listed in section 10--16--3H as nonconforming uses that must cease within two years.  The CDC found that the principal use of Victory's property was as a junkyard and as a wrecking yard.  Section 10--2--3 of Bensenville's zoning ordinance defines the following pertinent terms:

"USE, PRINCIPAL:  The main use and chief purpose of a parcel, as distinguished from an accessory use.  A principal use may be either a permitted or conditional use."  Village of Bensenville Zoning Ordinance §§10--16--3H, 10--2--3 (amended April 16, 2002).

As this definition makes clear, Victory's property can have only one principal use as that term is defined by Bensenville's zoning ordinance.

"JUNKYARD:  An open area where waste or used or secondhand materials are bought, sold, collected, exchanged, salvaged, stored, baled, packed, disassembled or handled, including scrap iron and other metal, paper, rags, rubber tires and bottles.  A wrecking yard is considered a junkyard, but uses [
sic
] carried [on] entirely within enclosed buildings, 
recycling centers
 and recycling collection points are not considered junkyards.

* * *

WRECKING YARD:  Any place where there are stored in the open three (3) or more motor vehicles or recreational vehicles, trailers or manufactured homes, that are not in operating condition and have not been restored to operation within thirty (30) days of their arrival, or where part thereof are stored in the open."  (Emphasis added.)  Village of Bensenville Zoning Ordinance §§10--16--3H, 10--2--3 (amended April 16, 2002).

As these two definitions indicate, all wrecking yards are junkyards.  But, recycling centers are not junkyards.

"RECYCLING CENTER:  A facility for separating and 
processing
 of used material prior to shipment elsewhere for use in 
manufacturing
."  (Emphasis added.)  Village of Bensenville Zoning Ordinance §§10--16--3H, 10--2--3 (amended April 16, 2002).

"Processing" is not defined in the ordinance, but the ordinance provides that if a term is not defined in the ordinance it shall be defined by Black's Law Dictionary and Webster's New Collegiate Dictionary.  Black's Law Dictionary provides no relevant definition.  However, Webster's provides the following helpful definitions of "process":

"2 a:  to subject to a special process or treatment (as in the course of manufacture) b (1): 
to subject to or handle through an established usu[al] routine set of procedures
 *** (2) to subject to examination or analysis."  (Emphasis added.)  Merriam-Webster's Collegiate Dictionary 929 (10th ed. 1998).

We note that, considering the mutually exclusive definitions of Bensenville's zoning ordinance together, a wrecking yard is a junkyard but a recycling center cannot be a junkyard or a wrecking yard.  Thus, if a property is a recycling center it cannot also be a junkyard or a wrecking yard.  A determination that a property's principal use is that of a recycling center precludes the determination that other uses may be ascribed to the property. With that in mind, we will now discuss the principal use, if any, of Victory's property.

Victory presented uncontroverted evidence that its principal use of its property conforms to definition 2b (1) in Webster's. Victory presented uncontroverted evidence that it takes in about 14,000 cars a year.  Most of these cars are towed to the property.  Out of these roughly 14,000 cars, only about 150 are resold intact.  Of the remaining cars, about 13,000 are sold to scrap metal dealers and the rest are sold for their parts.

Victory presented uncontroverted evidence that before the cars are crushed and sold for scrap metal, the cars go through the following process.  Victory removes the batteries and fluids such as antifreeze, Freon, gasoline, engine oil, and transmission oil.  Victory pays Duke's Oil or Oscar‛s Oil to recycle the antifreeze.  Victory pays Certified Radiator to capture and recycle the Freon.  Victory collects the gasoline for use in its tow trucks.  Victory then removes the gas tanks, aluminum wheels, rims and radiators, copper breakage, and catalytic converters.  Victory sells the aluminum in bulk for about $1,200 a ton.  The catalytic converters are sold to a company that recovers the catalysts, which are then sold to a company that recovers the platinum and palladium.  Finally, Victory flattens or crushes the cars and loads them onto a truck for shipment to a scrap metal dealer.  Thus, the record establishes that Victory takes cars onto its property and subjects them to an established and routine set of procedures.  Therefore, Victory established that its procedure is a process as that term is used by Bensenville's zoning ordinance.

After presenting relevant evidence that Victory takes over 14,000 cars a year through a process, as that term is used by Bensenville's zoning ordinance, Victory presented relevant evidence that the material is then shipped elsewhere for use in "manufacturing" as required by the definition of the term "recycling center."  After the cars go through the process described above, the cars are flattened or crushed, loaded onto trucks, and shipped to scrap metal dealers.  The scrap metal dealers then shred the cars into fragments, and the metallic materials are separated from the nonmetallic materials.  The aluminum is sold to secondary aluminum smelters and then to manufacturers, and the steel is sold to steel mills for manufacture.  Thus, Victory presented relevant evidence that the material is shipped elsewhere for use in manufacturing.

Having presented relevant evidence that Victory operates as a recycling center, as that term is defined in Bensenville's zoning ordinance, Victory then presented relevant evidence that its recycling activities constitute the principal use of its property.  Victory presented relevant evidence that for the year of the hearing, 2003, Victory's recycling activities accounted for over half or $1.6 million of the total $3.1 million in revenue.  The $1.6 million in recycling revenue was generated from more than $1.2 million for the sale of crushed cars sold for scrap, and more than $400,000 for the sale of bulk material, that is, aluminum, copper, lead, and platinum, removed from the cars before they are crushed.  Victory also presented evidence that almost all of the vehicles that come to Victory are recycled.  Only about 150 are sold intact and about 1,000 are sold for their parts.  Thus, Victory presented ample relevant evidence that its principal use of its property is as a recycling center.

Bensenville insists that the $1.2 million Victory makes from the sale of crushed cars should not be considered as revenue from a recycling activity.  Rather, Bensenville argues that this revenue should be attributed to a junkyard or a wrecking yard activity because the crushed cars are "used or secondhand materials" that "are bought, sold, collected, exchanged, salvaged, stored, baled, packed, disassembled or handled, including scrap iron," as defined in the zoning ordinance.  Bensenville also insists that the CDC's finding that Victory's principal use of its property is as a junkyard is not clearly erroneous, because every part of the definition of that term is met by the evidence presented at the hearing.  Bensenville states that the photographic evidence shows old scrap iron, paper, rags, tires, and other debris strewn all over the property, piled in every corner.  Bensenville asserts that this evidence establishes that the property is an open area within the meaning of the definition of "junkyard."  We recognize that the CDC gave this evidence more weight than the sales figure evidence discussed above.  However, we believe that the CDC was in error in this regard.  The sales evidence is a more reliable measurement of the principal use of the property than photographs.  Thus, the CDC's interpretation of the mixed questions of fact and law
, determining that Victory's principal use of its property is as a junkyard and as a wrecking yard, is clearly erroneous.  Rather, Victory's principal use of its property is as a recycling center.

Bensenville also insists that the CDC's finding that Victory's principal use of its property is as a wrecking yard is not clearly erroneous because every part of the definition of that term is met by the evidence presented at the hearing.  Bensenville argues that the record contains evidence that dozens of inoperable vehicles are stored on the property for 30 days or more, often stacked on top of one another.  The photographs also show that the stacked cars dominate the property.  However, Bensenville fails to recognize that the evidence establishes that when the cars enter the property they are subjected to a process and then shipped
 elsewhere to be used in manufacturing.  The CDC was asked to determine the principal use of the property.  The fact that some evidence meets the definition of both junkyard and wrecking yard does not complete the analysis
.  The CDC failed to properly apply the definitions provided in the zoning ordinance to the facts of this case and rendered a clearly erroneous decision.  After applying the clear and unambiguous language of Bensenville's zoning ordinance to the facts, we determine that the principal use of Victory's property is as a recycling center.  Accordingly, the trial court properly determined that the CDC‛s determination was clearly erroneous and reversed the CDC's ruling.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GROMETER and GILLERAN JOHNSON, JJ., concur.